IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN BERTONCELLO-BASURTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | JURY DEMANDED |
| RELYANT GLOBAL LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES the Plaintiff, John Bertoncello-Basurto ("Mr. Bertoncello-Basurto"), and sues the Defendant Relyant Global, Inc. ("Relyant") and respectfully shows this Honorable Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Mr. Bertoncello-Basurto is an adult citizen and resident of Duval County, Florida.

2. Relyant is a limited liability company with its principal office located in Blount County, Tennessee.

3. This action arises from Relyant's unlawful conduct, as described more fully herein, for discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e, *et seq.* ("Title VII") and for discrimination and retaliation in violation of the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, *et. seq.* ("THRA").

4. The matter in controversy involves questions of federal law, giving this Court original jurisdiction of this action pursuant to the provisions of 29 U.S.C. § 2617 and 28 U.S.C. § 1331.[1]

5. The matter in controversy also involves ancillary claims that form part of the same case or controversy as that claim which is within the original jurisdiction of the Court. This Court has supplemental jurisdiction of such ancillary claims pursuant to the provisions of 28 U.S.C. §1367.

6. Venue is proper with this Court pursuant to 28 U.S.C. §§123(a)(1) and 1391, and 42 U.S.C. §§ 2000e-5(f)(3).

7. Mr. Bertoncello-Basurto timely filed with the EEOC a charge of sex discrimination and retaliation, received a Notice of Rights on January 26, 2021, and timely files this suit within the prescribed period. *See* Notice of Right to Sue attached hereto as **EXHIBIT A**.

8. At all times relevant to this action, Relyant employed Creed Williams and his actions as forth below are those of Relyant pursuant to general principles of agency.

## FACTUAL ALLEGATIONS

9. This case stems from Relyant's actions surrounding the termination of Mr. Bertoncello-Basurto in February 2019.

10. Relyant employs at least fifteen (15) employees and is a covered employer under Title VII.

---

[1] Mr. Bertoncello-Basurto would note that the Parties are citizens of different states and that Mr. Bertoncello-Basurto's damages exceed $75,000.00. As such, jurisdiction would also be proper under 28 U.S.C. § 1332.

11. Mr. Bertoncello-Basurto was employed by Relyant in a MEC QC/Safety position from on or around August 23, 2018, until he was fired in February 2019.

12. During his employment with Relyant, Mr. Bertoncello-Basurto was stationed at a work site located at a naval base in the United States territory Guam.

13. Mr. Bertoncello-Basurto's termination stems from an off-campus incident that occurred between he and another Relyant employee.

14. Specifically, on December 22, 2018, Mr. Bertoncello-Basurto was at a local establishment named "Ta's Tavern", which is located in Guam.

15. Ta's Tavern is a tavern that is frequented by individuals in Mr. Bertoncello-Basurto's field.

16. While Mr. Bertoncello-Basurto was at Ta's Tavern, four other Relyant employees entered the establishment.

17. Prior to these Relyant employees entering, there was no one in the tavern except for Mr. Bertoncello-Basurto and the barkeeper, Maebeline Mailo.

18. Out of these four other Relyant employees who entered Ta's Tavern, Mr. Bertoncello-Basurto recognized one of them as Ms. Keisha Paez. He had been introduced to Ms. Paez, but he did not know her prior to this encounter at the tavern on December 22, 2018.

19. Mr. Bertoncello-Basurto also recognized another Relyant employee; however, that employee left the tavern almost immediately after entering.

20. After entering, the two-remaining male Relyant employees sat on the opposite side of the tavern while Ms. Paez continued to walk towards Mr. Bertoncello-Basurto and the barkeeper, Ms. Mailo.

21. Ms. Paez engaged Mr. Bertoncello-Basurto with conversation regarding their work but quickly went wayward when Ms. Paez suddenly asked Mr. Bertoncello-Basurto if he thought she looked "good".

22. After this random inquiry, Mr. Bertoncello-Basurto began to notice that Ms. Paez was intoxicated. However, in an attempt to be diplomatic, Mr. Bertoncello-Basurto responded innocently by stating that Ms. Paez was a young woman, and all young women look pretty.

23. Mr. Bertoncello-Basurto then began to resume his conversation with Ms. Mailo but Ms. Paez reached across Mr. Bertoncello-Basurto's chest and pulled him towards her.

24. At this point, Ms. Paez said, "You can have all this for twenty-five [hundred dollars]."

25. Mr. Bertoncello-Basurto responded by saying that he was not interested in engaging in any affair with Ms. Paez and also made a comment directed to Ms. Paez mentioning his distaste in purchasing anything from her.

26. At no time did Mr. Bertoncello-Basurto lay his hands on Ms. Paez or grope her in any way.

27. Following Mr. Bertoncello-Basurto's response to Ms. Paez, Ms. Mailo laughed at Mr. Bertoncello-Basurto' remark. Apparently, this angered Ms. Paez.

28. After a few minutes of silence, Ms. Mailo excused herself to go to the bathroom.

29. As soon as Ms. Mailo left the room, Ms. Paez hit Mr. Bertoncello-Basurto in the face with a mug she had in her hand.

30. This knocked Mr. Bertoncello-Basurto to the floor, where Ms. Paez continued punching Mr. Bertoncello-Basurto.

31. The other two male Relyant employees that remained in the tavern did not immediately respond in any fashion to Ms. Paez's actions.

32. Eventually, Ms. Mailo rushed out of the bathroom and immediately began to pull Ms. Paez off Mr. Bertoncello-Basurto.

33. At this point, the other two male Relyant employees attempted to assist Ms. Mailo by pulling Ms. Paez off of Mr. Bertoncello-Basurto.

34. However, even after Ms. Paez was pulled off, she still was able to kick Mr. Bertoncello-Basurto in the face.

35. As the other two male Relyant employees removed Ms. Paez from the tavern, she started yelling obscenities and derogatory remarks at Mr. Bertoncello-Basurto.

36. This attack by Ms. Paez resulted in a laceration on Mr. Bertoncello-Basurto's face, as well as his face being covered in blood.

37. Ms. Mailo proceeded to call the Guam Police Department ("GPD").

38. Mr. Bertoncello-Basurto and Ms. Mailo gave GPD statements.

39. GPD ultimately declared the situation as an assault by Ms. Paez against Mr. Bertoncello-Basurto. Incident Report attached hereto as **EXHIBIT B**.

40. As Mr. Bertoncello-Basurto's injuries persisted, Ms. Mailo was forced to close the establishment and take Mr. Bertoncello-Basurto to the Guam Memorial Hospital Emergency Room.

41. While waiting to be seen in the Emergency Room, Mr. Bertoncello-Basurto contacted his immediate supervisor, Mr. Peter Grubb.

42. Mr. Bertoncello-Basurto informed Mr. Grubb of the violent assault and injuries that he suffered at Ta's Tavern by Ms. Paez.

43. The next workday, Mr. Bertoncello-Basurto was interviewed by management at Relyant.

44. Specifically, Mr. Bertoncello-Basurto was interviewed by Mr. Creed Williams, who worked at the Director of Operations for Relyant's operation in Guam.

45. During Mr. Bertoncello-Basurto's interview, Relyant did not inquire about the details of the incident but were only interested in knowing who Mr. Bertoncello-Basurto had talked to and what he had said to the police.

46. Mr. Bertoncello-Basurto informed Relyant management that he could provide them with a statement from himself, as well as Ms. Mailo; Relyant was uninterested in obtaining a statement from either Mr. Bertoncello-Basurto or Ms. Mailo.

47. Later that week Mr. Creed Williams informed Mr. Bertoncello-Basurto that Relyant viewed the assault against him as a "non-issue".

48. Mr. Williams also informed Mr. Bertoncello-Basurto that he was free to pursue this issue on his own but that if he wanted to press Relyant to take any action, Relyant would take the position that it would be Mr. Bertoncello-Basurto's word against Ms. Paez's word and conclusively stated that since Mr. Bertoncello-Basurto was a male involved in an assault with a female, Relyant's position would be that Mr. Bertoncello-Basurto was the guilty party.

49. This action, in and of itself, was gender discrimination against Mr. Bertoncello-Basurto.

50. On or around February 6, 2019, Mr. Williams asked Mr. Bertoncello-Basurto if he could just forget about the incident.

51. Mr. Bertoncello-Basurto responded by telling him no, he could not forget about the incident.

52. On or around February 6, 2019, a Human Resource employee with Relyant approached Mr. Bertoncello-Basurto and asked if he was ready to put a "closure" on this matter by writing a statement to that affect. In other words, Mr. Bertoncello-Basurto was asked to author a statement detailing that he was not going to seek further action against Ms. Paez.

53. Mr. Bertoncello-Basurto agreed that he would provide a statement, and further, asked if his statement would be going to Relyant's home office in Tennessee. Relyant's employee responded in the affirmative.

54. As requested, Mr. Bertoncello-Basurto authored a statement.

55. As Mr. Bertoncello-Basurto believed that this statement was being provided to Relyant's home office in Tennessee, who Mr. Bertoncello-Basurto presumed had little, to no, knowledge of this incident, Mr. Bertoncello-Basurto detailed in his statement everything that occurred, from the incident itself all the way up to being contacted by Human Resources.

56. Specifically, Mr. Bertoncello-Basurto included the fabricated position that was related to him by Mr. Williams and set out above in Paragraph 48. Furthermore, Mr. Bertoncello-Basurto documented that Relyant was discriminating against him due to the fact that he was a male.

57. Just merely days after sending in his statement, on February 12, 2019, Mr. Bertoncello-Basurto was terminated for cause.

58. Ironically, Mr. Bertoncello-Basurto was terminated for his involvement in the assault against him only days after Mr. Bertoncello-Basurto was informed the company viewed the incident as a "non-issue".

59. Mr. Bertoncello-Basurto was specifically told that he was not terminated due to job performance.

60. Furthermore, this action occurred on December 22, 2018 and no action was taken for months. However, three (3) days after Mr. Bertoncello-Basurto documented that Relyant was discriminating against him due to the fact that he was a male, Mr. Bertoncello-Basurto was terminated.

61. Upon information and belief, Relyant also discriminated against Mr. Bertoncello-Basurto by failing to take any disciplinary action against the assailant, Ms. Paez, a "similarly-situated" female.

62. Moreover, upon information and belief, Relyant took adverse against Mr. Bertoncello-Basurto and no action against Ms. Paez despite the fact that there was a Guam Police Department police report and a documented witness statement stating that Ms. Paez had assaulted Mr. Bertoncello-Basurto.

63. In the alternative, even if Relyant did initially discipline Ms. Paez, upon information and belief, Ms. Paez did not receive as much discipline as Mr. Bertoncello-Basurto.

64. Prior to this incident, Mr. Bertoncello-Basurto had no prior misconduct while employed by Relyant.

65. Based on Relyant's actions, Mr. Bertoncello-Basurto was discriminated by Relyant due to his gender and subsequently retaliated against due to reporting this discrimination to Relyant.

66. Relyant knew or should have known that its actions as alleged herein were prohibited by Title VII.

## CAUSES OF ACTION

### DISCRIMINATION UNDER TITLE VII

67. Mr. Bertoncello-Basurto incorporates and re-alleges the foregoing allegations as if fully set forth herein.

68. Mr. Bertoncello-Basurto is a member of a protected class via sex/gender.

69. Mr. Bertoncello-Basurto suffered an adverse employment action by being terminated and/or by not having his assault adequately investigated by Relyant.

70. Mr. Bertoncello-Basurto was qualified for his position as he works in a highly technical niche industry (Unexploded Ordnance (UXO))[2] and is one of the few individuals in the world who is trained and skilled in identifying and removing UXOs.

71. Relyant treated Mr. Bertoncello-Basurto differently from similarly situated individuals outside of his protected class by treating him differently than Relyant treated Ms. Paez, the female who assaulted Mr. Bertoncello-Basurto on December 22, 2018.

72. Based on the allegations herein, Mr. Bertoncello-Basurto was discriminated against by Relyant.

73. Because Mr. Bertoncello-Basurto was discriminated against, he is entitled to damages from Relyant.

---

[2] UXO's are explosive weapons (bombs, bullets, shells, grenades, land mines, naval mines, etc.) that did not explode when they were employed and still pose a risk of detonation, potentially many decades after they were used or discarded. Roughly 11,000 bombs and other munitions were dropped on Guam in World War II, but never detonated. Decades later, the U.S. Defense Department is still struggling to clear out UXO's and other discarded munitions on the strategically vital South Pacific island used by the U.S. Navy and Air Force, according to a Defense Department Inspector General report released on June 16, 2020. *See* Geoff Ziezulewicz, *Decades after World War II, DoD struggles to clear unexploded ordnance at Navy and Air Forces bases on Guam* (July 8, 2020), https://www.navytimes.com/news/your-navy/2020/07/08/decades-after-world-war-ii-dod-struggles-to-clear-unexploded-ordnance-at-navy-and-air-forces-bases-on-guam/.

## RETALIATION UNDER TITLE VII

74. Mr. Bertoncello-Basurto incorporates and re-alleges the foregoing allegations as if fully set forth herein.

75. As alleged herein, Mr. Bertoncello-Basurto opposed a practice made unlawful under Title VII and engaged in activity protected by Title VII by filing a report/written statement to Relyant's home office, wherein he detailed Relyant's failure to properly investigate the assault against him by another employee and further, Relyant's position that Mr. Bertoncello-Basurto was guilty due to the fact that he was a male involved in an assault while the assailant was a female.

76. The exercise by Mr. Bertoncello-Basurto of such rights and protected activity was known to Relyant.

77. Relyant took adverse actions against Mr. Bertoncello-Basurto by terminating him due to the fact that he opposed a practice made unlawful under Title VII and engaged in activity protected by Title VII, such that a reasonable employee would have found the actions materially adverse, and which would dissuade a reasonable employee from making or supporting such report/written statement to upper management, home office or human resources at Relyant.

78. There was a causal connection between the exercise by Mr. Bertoncello-Basurto of such rights and protected activity and the adverse actions against him.

79. Specifically, Relyant did not engage in any adverse action against Mr. Bertoncello-Basurto until after he submitted his written statement detailing Relyant's discriminatory, improper, and illegal actions.

80. Furthermore, Relyant interfered with and attempted to hinder, impede, and prevent Mr. Bertoncello-Basurto from obtaining subsequent employment employment.

81. There is a causal connection between the exercise by Mr. Bertoncello-Basurto of such rights and protected activity and the interfering with and attempting to impede, hinder, and prevent Bertoncello-Basurto from obtaining subsequent.

82. Based on Relyant's action, Mr. Bertoncello-Basurto was subjected to unlawful retaliation under Title VII because he opposed a practice made unlawful under Title VII and engaged in activity protected by Title VII by reporting gender discrimination as alleged herein.

83. Because Mr. Bertoncello-Basurto was discriminated against, he is entitled to damages from Relyant.

## DISCRIMINATION UNDER THE THRA

84. Mr. Bertoncello-Basurto incorporates and re-alleges the foregoing allegations as if fully set forth herein.

85. Mr. Bertoncello-Basurto is a member of a protected class via sex/gender.

86. Mr. Bertoncello-Basurto suffered an adverse employment action by being terminated and/or by not having his assault adequately investigated by Relyant.

87. Mr. Bertoncello-Basurto was qualified for his position as he works in a highly technical niche industry (Unexploded Ordnance (UXO)) and is one of the few individuals in the world who is trained and skilled in identifying and removing UXOs.

88. Relyant treated Mr. Bertoncello-Basurto differently from similarly situated individuals outside of his protected class by treating him differently than Relyant treated Ms. Paez, the female who assaulted. Mr. Bertoncello-Basurto on December 22, 2018.

89. Based on the allegations herein, Mr. Bertoncello-Basurto was discriminated against by Relyant.

90. Because Mr. Bertoncello-Basurto was discriminated against, he is entitled to damages from Relyant.

## RETALIATION UNDER THE THRA

91. Mr. Bertoncello-Basurto incorporates and re-alleges the foregoing allegations as if fully set forth herein.

92. As alleged herein, Mr. Bertoncello-Basurto opposed a practice made unlawful under the THRA and engaged in activity protected by the THRA by filing a report/written statement to Relyant's home office, wherein he detailed Relyant's failure to properly investigate the assault against him by another employee and further, Relyant's position that Mr. Bertoncello-Basurto was guilty due to the fact that he was a male involved in an assault while the assailant was a female.

93. The exercise by Mr. Bertoncello-Basurto of such rights and protected activity was known to Relyant.

94. Relyant took adverse actions against Mr. Bertoncello-Basurto by terminating him due to the fact that he opposed a practice made unlawful under the THRA and engaged in activity protected by the THRA, such that a reasonable employee would have found the actions materially adverse, and which would dissuade a reasonable employee from making or supporting such report/written statement to upper management, home office or human resources at Relyant.

95. There was a causal connection between the exercise by Mr. Bertoncello-Basurto of such rights and protected activity and the adverse actions against him.

96. Specifically, Relyant did not engage in any adverse action against Mr. Bertoncello-Basurto until after he submitted his written statement detailing Relyant's discriminatory, improper, and illegal actions.

97. Furthermore, Relyant interfered with and attempted to hinder, impede, and prevent Mr. Bertoncello-Basurto from obtaining subsequent employment.

98. There is a causal connection between the exercise by Mr. Bertoncello-Basurto of such rights and protected activity and the interfering with and attempting to impede, hinder, and prevent Bertoncello-Basurto from obtaining subsequent employment.

99. Based on Relyant's action, Mr. Bertoncello-Basurto was subjected to unlawful retaliation under Title VII because he opposed a practice made unlawful under the THRA and engaged in activity protected by the THRA by reporting gender discrimination as alleged herein.

100. Because Mr. Bertoncello-Basurto was discriminated against, he is entitled to damages from Relyant.

## **DAMAGES**

101. Mr. Bertoncello-Basurto incorporates and re-alleges the foregoing allegations as if fully set forth herein.

102. As the direct and proximate result of Defendants' unlawful actions as alleged herein, Mr. Bertoncello-Basurto has suffered, and will continue to suffer, actual, compensatory, consequential, incidental, pecuniary, and other damages, including but not limited to, loss of employment, lost wages, lost benefits, out of pocket expenses, emotional and mental distress, pain, suffering, and anguish, stress, humiliation, loss of reputation, embarrassment, inconvenience, and loss of enjoyment of life. Mr. Bertoncello-Basurto is

entitled to and seeks all of these damages, as well as reinstatement or front pay, and punitive damages as allowed by law.

103. Mr. Bertoncello-Basurto is entitled to and seeks recovery of her reasonable attorneys' fees, expert witness fees, pre- and post-judgment interest, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Bertoncello-Basurto prays for the following relief:

A. For the Court to assume and continue jurisdiction of this action;

B. For a permanent injunction enjoining Relyant and its officials, officers, agents, managers, employees, and representatives from engaging in the unlawful practices and acts described herein;

C. For a judgment that Relyant violated Title VII as to Mr. Bertoncello-Basurto;

D. For a judgment that Relyant violated the Tennessee Human Rights act as to Mr. Bertoncello-Basurto;

E. For an award of actual, compensatory, consequential, incidental, pecuniary, and other damages according to proof, including but not limited to, lost wages from the date of discharge and incorporating the anticipated raises Mr. Bertoncello-Basurto would have received had he not been fired and had he not been retaliated against, lost benefits, out of pocket expenses, emotional and mental distress, pain, suffering, and anguish, stress, humiliation, embarrassment, loss of reputation, inconvenience, and loss of enjoyment of life;

F. For Mr. Bertoncello-Basurto to be reinstated to employment, or in the alternative, for an award of front pay in the event that this Court finds reinstatement unfeasible;

G. For an award of pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, and costs;

H. For an award of punitive damages as allowed by law;

I. For other appropriate legal, equitable and further relief which the Court deems just and proper; and

J. I. For a trial by jury on all issues properly triable by a jury.

RESPECTFULLY SUBMITTED this the 6th day of April, 2021.

        TAYLOR & KNIGHT, GP

        */s/ Jordan T. Newport*
        Jordan T. Newport, BPR No. 037604
        800 South Gay St., Ste. 600
        Knoxville, TN 37929
        P: (865) 971-1701 ext. 114
        F: (865) 971-1705
        jnewport@taylorknightlaw.com
        *Attorney for Plaintiff John Bertoncello-Basurto*