UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOHN BERTONCELLO-BASURTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:21-cv-125-TAV-DCP |
| | ) | |
| RELYANT GLOBAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendant's motion for summary judgment [Doc. 24]. Plaintiff has responded [Doc. 27], and defendant has replied [Doc. 28]. This matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, defendant's motion for summary judgment [Doc. 24] will be **GRANTED** and this case will be **DISMISSED**.

I.      **Background**

In his amended complaint, plaintiff raises claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. [Doc. 12, pp. 1, 10–13].

Plaintiff was hired in a "MEC QC/Safety position" with defendant Relyant Global, LLC ("Relyant"), and stationed in Guam, beginning on or about September 10, 2018 [Doc. 12 ¶ 10; Doc. 27-2, p. 22]. On December 20, 2018, while employed in that position, plaintiff was at a bar called Ta's Tavern, which plaintiff frequented while stationed in

Guam [Doc. 24-1, pp. 24–26]. While plaintiff was at the bar, Keisha Paez, another Relyant employee, entered the bar with two men [*Id.* at 25–26]. The two men stayed at the opposite end of the bar, but Paez approached plaintiff [*Id.* at 26]. Paez sat next to plaintiff and began talking about work [*Id.* at 27–28]. At this point, plaintiff and Paez's accounts of what transpired are vastly different.

Plaintiff claims that Paez asked him whether he thought she was "good looking," and plaintiff responded to the effect that Paez was young "and all young girls are pretty" [*Id.* at 28]. Paez then told plaintiff that he could "have all of this for 25," which plaintiff did not understand until the bartender, Mae Mailo, who overheard this conversation, inquired what Paez meant [*Id.* at 29]. Paez then responded "$2500 for this, for me, for the whole weekend." Plaintiff responded that he was not interested and Mailo laughed [*Id.*]. Thereafter, Mailo went to the restroom and Paez immediately took her mug "or whatever she had in her hand" and hit plaintiff in the face [*Id.* at 31]. Plaintiff fell backwards off the bar stool, and awoke to Paez on top of him, hitting him repeatedly. Mailo, having heard the commotion, returned from the restroom, and, at the same time, the two men who had entered the bar with Paez began to pull her off plaintiff and out of the bar [*Id.*]. Plaintiff had a gash on his face and ultimately received medical attention and filed a police report [*Id.* at 33–35].

Paez, however, reported that, after discussing work, plaintiff began to share personal issues and say "uncomfortable things to her" [Doc. 24-2, p. 3]. Paez alleged that plaintiff attempted to solicit sex with her, and also began saying inappropriate things about Paez's

roommate. Paez reported that plaintiff was verbally sexually assaulting her, and she told him to stop, but he continued to make inappropriate remarks, including threatening to rape her. Thereafter, Paez hit plaintiff with a glass and told him not to do that again [*Id.*].

While plaintiff was at the hospital receiving medical treatment, he contacted his direct supervisor, Pete Grubb, to report the incident [Doc. 24-1, pp. 18, 35]. Grubb informed plaintiff that he would discuss the incident with his supervisor, Creed Williams, Relyant's Director of Operations in Guam [Doc. 27-3, p. 1; Doc. 24-6, p. 1]. Plaintiff claims that, after this report, Williams told him that if he moved forward with actions against Paez, he and Relyant would take Paez's side as she "was the female party in an assault involving a man" [Doc. 27-3, pp. 1–2]. He also contends that Williams told him that he and Relyant "would view [plaintiff] as the guilty party in such altercation, since [plaintiff] was the male involved in an assault between a male and female" [*Id.* at 2]. Moreover, plaintiff states that Williams told him that "Paez's sexual harassment and assault against [plaintiff] was a 'nonissue.'" Williams denies making these statements [Doc. 24-6, p. 1]. Williams also denies that plaintiff told him that he was sexually harassed by Paez or complained of discrimination on the basis of his sex [*Id.*].

After the incident, plaintiff was interviewed by Ryan Saliva, Relyant's Human Resources ("HR") Manager for its operations in Guam [Doc. 24-1, p. 50; Doc. 24-2, p. 1]. Saliva asked plaintiff to provide an account of the incident [Doc. 24-1, p. 51]. Saliva interviewed both plaintiff and Paez and summarized his findings in an Incident Report [Doc. 24-2, p. 1]. In this report, Saliva recommended that the matter be left to local law

enforcement and that plaintiff and Paez be separated at work, but the ultimate decision on terminating either party was not his decision, and he forwarded the Incident Report to HR Director Norma Henning in Relyant's home office in Maryville, Tennessee on or about December 31, 2018. Saliva denied that plaintiff ever told him that he was being sexually harassed by Paez or that he was being discriminated against because of his sex [*Id.*].

Saliva's Incident Report, dated December 28, 2018, stated that it related to the incident in which Paez hit plaintiff with a bottle injuring him with lacerations to the face, but stated that "[t]here was no confirmation of what initiated the actions of [Paez]" [*Id.* at 2]. The Incident Report indicated that Saliva met with plaintiff on December 26, 2018, to request information about the incident, and plaintiff explained his version of the incident to Saliva, noting that Mailo had witnessed the incident [*Id.*]. The Incident Report also stated that Saliva interviewed Paez, who explained her version of events, as described previously [*Id.* at 2–3]. The Incident Report further indicated that Saliva met with the other men who were in the bar at the time of the incident, and recounted their recollections of the incident, which largely supported Paez's story [*Id.* at 3].

In early February 2019, Saliva asked plaintiff for an update regarding his pursuit of criminal charges against Paez, and asked plaintiff to submit a written statement, which plaintiff did [Doc. 24-1, pp. 52–53, 56; Doc. 24-2, p. 1]. Plaintiff's February 2019 written statement reiterates his version of events, largely consistent with the version described above [Doc. 24-2, p. 5]. Plaintiff also stated that after the incident several employees spoke to him about the incident and he "was told [he] was free to continue pressing charges

4

against Ms. Paez but it would be her word against mine even though someone else (Ms. Maito [sic]) was present during the incident" [*Id.* at 6]. In the final paragraph of his written statement, plaintiff stated "[s]ince I have been told by several co-workers (I will not divulge their names) that they do not believe me since I am the male in this situation, I do not see the use of continuing this matter as I feel it will only further damage my name" [*Id.*]. Plaintiff contends that his intention with providing this written statement was to report sexual harassment and discrimination [Doc. 27-3, p. 2]. Saliva forwarded this written statement to Henning [Doc. 24-2, p. 1].

Henning stated that, in February 2019, she reviewed the information Saliva provided about the incident in Guam, specifically, Saliva's Incident Report dated December 28, 2018 [Doc. 24-3, p. 1]. She also reviewed plaintiff's February 2019 written statement but did not understand from that statement that plaintiff was claiming discrimination based on his sex [*Id.* at 2]. Based on the Incident Report, Henning was concerned by the allegations of both employees, and discussed the matter with Don Patton, Relyant's President, recommending that Relyant terminate both plaintiff and Paez effective immediately [*Id.* at 1]. However, she did not discuss plaintiff's February 2019 written statement with Patton prior to Patton's termination decision [*Id.* at 2].

Patton ultimately made the final decision to terminate both plaintiff and Paez based on the incident that occurred in the bar in Guam [Doc. 24-4, p. 1]. Patton became aware of the incident in early February 2019, after Saliva had investigated the matter. Upon learning of the incident, Patton was concerned that two employees had been involved in a

5

bar fight in Guam and was also concerned about both Paez's allegations that plaintiff was a "sexual predator" and plaintiff's allegations that Paez physically assaulted him [*Id.*]. Based on the facts of the incident, as relayed to him, Patton felt that several Relyant policies had been violated by both parties [*Id.* at 1–2].

After discussing the matter with Henning and Chief Operating Officer Matt Hulsey, Patton determined that the behavior of both Paez and plaintiff was "intolerable" and violated multiple Relyant policies; therefore, he decided to terminate both plaintiff and Paez for cause effective February 12, 2019 [*Id.* at 2]. Patton stated that he did not recall reviewing plaintiff's February 2019 written statement before making his decision to terminate both parties, and did not speak to Saliva, Williams, or Grubb before his termination decision [*Id.*]. Hulsey likewise stated that he did not recall having reviewed plaintiff's written statement before discussing the potential termination with Patton, nor was he aware of any claim by plaintiff that he was treated differently because he is a male [Doc. 24-5, p. 2].

On or about February 12, 2019, Saliva received instruction from Relyant's home office to prepare separation paperwork for both plaintiff and Paez, and Saliva provided these notices to Williams [Doc. 24-2, p. 1]. Williams delivered separation notices to both plaintiff and Paez on or about February 12, 2019, as well as final paychecks [Doc. 24-6, pp. 2–4]. Neither plaintiff nor Paez are eligible for re-hire by Relyant and neither has been re-hired in any capacity since their terminations [Doc. 24-4, p. 3].

6

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

## III. Analysis

In assessing discrimination or retaliation claims under Title VII based on circumstantial evidence courts apply the *McDonnell Douglas*[1] framework.[2] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). *McDonnell Douglas* establishes a three-step burden-shifting framework for analyzing employment discrimination or retaliation claims. *Gribcheck*, 245 F.3d at 550. First, a plaintiff must set forth a prima

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[2] In their summary judgment briefs, both parties apply the *McDonnell Douglas* burden-shifting framework, and therefore, appear to agree that this case is based on circumstantial evidence.

7

facie case of discrimination or retaliation. *Id.* The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its actions. *Id.* If defendant carries this burden, plaintiff must then show by a preponderance of the evidence that the reasons offered by the defendant were pretext for discrimination or retaliation. *Id.*

### A.    Sex Discrimination

As to the sex discrimination claim, defendant argues that plaintiff cannot establish that he was treated differently than similarly-situated, non-protected employees, because both he and Paez, the two employees involved in the bar fight, were terminated on the same day and neither has ever been re-hired or is eligible for re-hire [Doc. 24, pp. 9–10].

Plaintiff responds that he was treated differently than Paez, because his side of the incident was not as thoroughly investigated as Paez's version of events [Doc. 27, p. 13]. Plaintiff contends that he discovered this new ground for a discrimination claim on September 20, 2022, upon receiving discovery responses and documents [*Id.* at 14]. Plaintiff argues that, in his investigation, Saliva interviewed several, if not all, of Paez's witnesses, which were her friends, and used their unsworn accounts in the Incident Report [*Id.* at 15]. Saliva did not, however, interview Mailo, plaintiff's witness [*Id.* at 16]. Plaintiff also contends that he was treated differently than Paez because he "was automatically assumed to be guilty" [*Id.* at 18].

Defendant replies that plaintiff has conceded that the sole basis for his discrimination claim in his amended complaint is meritless, and now attempts to raise a new purported ground for discrimination [Doc. 28, pp. 6–7]. Defendant contends that,

even on this new ground, plaintiff cannot establish a prima facie case of discrimination, as there is no factual basis for his assertion that Relyant more thoroughly investigated Paez's version of events when Saliva's first action after learning of the incident was to interview plaintiff [*Id.* at 7]. Defendant contends that plaintiff's opinion about what additional information Mailo might have added to the investigation is pure speculation [*Id.* at 8].

To establish a prima facie case of sex discrimination under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected group, (2) he was subjected to an adverse employment action, (3) he was qualified for the position, and (4) similarly situated non-protected employees were treated more favorably. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

The Court first addresses plaintiff's attempt to raise a new ground for his discrimination claim for the first time in his response to summary judgment. In his amended complaint, plaintiff alleges that he was discriminated against because he was terminated and either no action or less discipline was taken against Paez, a similarly situated female [Doc. 12, p. 8]. Later in the amended complaint, plaintiff cursorily states that he "suffered an adverse employment action by being terminated and/or by not having his assault adequately investigated by Relyant" [*Id.* at 10]. The Court finds that plaintiff has not sufficiently alleged a claim for discrimination based on his argument that his version of events was not as thoroughly investigated as Paez's because he is male. Plaintiff seems to admit that this is a new ground for his discrimination claim, which he purportedly discovered during the course of the discovery process [Doc. 27, p. 14]. The Court notes

9

that "plaintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint." *Howard v. Tennessee*, 740 F. App'x 837, 843 (6th Cir. 2018); *see also Kennedy v. Wal-Mart Stores East, L.P.*, No. 3:17-cv-946, 2018 WL 6330305 at *7 (M.D. Tenn. Dec. 4, 2018) ("A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment"); *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claim to assert new theories, it may not do so in response to summary judgment or on appeal"). But despite his admission that he discovered this ground for his discrimination claim in September 2022 [Doc. 27, p. 14], plaintiff last amended his complaint in June 2021, and did not include any facts or allegations regarding any alleged disparity in the investigative process. Accordingly, the Court finds that plaintiff has not properly pled this claim, and therefore, cannot raise this new ground to oppose summary judgment. As a result, the Court declines to address the merits of this argument.

Next, before addressing this argument, the Court notes that it appears plaintiff has abandoned any allegation that he was treated differently than Paez because she received less discipline for her involvement in the incident. To the extent that plaintiff still maintains this argument, the Court finds that there is no genuine issue of material fact as to whether plaintiff was treated differently than Paez with regard to discipline for the incident. The record clearly establishes that both plaintiff and Paez were terminated on the same day for their involvement in the incident, and neither plaintiff nor Paez have ever been rehired by Relyant or are eligible for rehire by Relyant [Doc. 24-4, pp. 2–3; Doc. 24-2, p. 1;

Doc. 24-6, pp. 2–4]. Accordingly, to the extent that plaintiff maintains a discrimination claim on this ground, the Court will grant summary judgment in defendant's favor.

Finally, to the extent plaintiff contends that he was "automatically assumed to be guilty," such is not supported by the record. As noted previously, Saliva heard plaintiff's version of events [Doc. 24-2, p. 1] and presented this, along with other witnesses' version of events, to upper management [*Id.* at 1–3], who ultimately found impropriety on the part of both plaintiff and Paez [Doc. 24-4, pp. 1–2]. Given this investigative process, there is simply no support for plaintiff's claim that he was "automatically assumed" to be guilty.

For these reasons, the Court finds that there is no genuine issue of material fact as to whether plaintiff can establish a prima facie claim of sex discrimination, and therefore, summary judgment is appropriate.

### B. Retaliation

Next, defendant argues that the sole basis for plaintiff's retaliation claim is that he was terminated after submitting a written statement to Relyant complaining about mistreatment on the basis of sex [Doc. 24, p. 10]. However, plaintiff cannot establish the first, second, or fourth elements of his retaliation claim [*Id.* at 11]. First, defendant argues that plaintiff never participated in any protected activity, as his written statement did not oppose any practice made unlawful by Title VII [*Id.* at 11–12]. Additionally, defendant contends plaintiff cannot show that Reylant knew of the exercise of any protected activity as Henning did not understand plaintiff's statement to allege that Relyant acted unlawfully and Patton, the decisionmaker, did not recall reviewing the statement before his termination

11

decision [*Id.* at 13]. Finally, defendant submits that plaintiff cannot establish a causal connection between the written statement and his termination, given that Patton does not recall reviewing the statement, and, even if he had, the content of that statement would not have factored into the termination decision which was based on the conduct of both employees as detailed in the Incident Report [*Id.* at 14].

Plaintiff responds that he views his written statement as complaining of sexual harassment and/or discrimination [Doc. 27, p. 20]. Plaintiff argues that the close temporal proximity between his written statement and his termination is sufficient to show a causal connection [*Id.* at 21–22]. Plaintiff further contends that he has established a prima facie case of co-worker retaliation, based failure to investigate his complaints [*Id.* at 22].

Defendant replies that an objective reading of plaintiff's statement is clear that he is speaking out about being physically attacked, not sexual harassment, and, even if it did address sexual harassment, such, by itself, is not actionable under Title VII [Doc. 28, pp. 12–13]. Moreover, according to defendant, plaintiff's offhand comment that unnamed co-workers did not believe him because he was the male in the situation does not implicate Title VII [*Id.*]. And further because the undisputed facts show no causal link, temporal proximity alone cannot defeat summary judgment [*Id.* at 14]. Defendant also contends that plaintiff has asserted a new claim, not contained in his amended complaint for co-worker retaliation [*Id.*].

To establish a prima facie case of retaliation under Title VII, plaintiff must show that that: (1) he engaged in protected activity; (2) the employer knew of that activity;

(3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).

### 1. Protected Activity

"Protected activity covers conduct such as complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices[.]" *Curry v. SBC Communs., Inc.*, 669 F. Supp. 2d 805, 831 (E.D. Mich. 2009) (internal quotation marks omitted) (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008). While "Title VII does not restrict the manner or means by which an employee may oppose an unlawful employment practice" it does not protect an employee "if his opposition is merely a vague charge of discrimination." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (internal quotation marks omitted). And, "[o]nly complaints concerning discrimination made unlawful by Title VII" are protected under Title VII's anti-retaliation provisions, and "[c]omplaints concerning unfair treatment in general are insufficient to constitute protected activity if they do not specifically address discrimination." *Philip v. Wrigley Mfg. Co., LLC*, No. 1:09-cv-144, 2010 WL 4318880, at *11 (E.D. Tenn. Oct. 22, 2010) (internal quotation marks omitted).

But "[j]ust as an employee is entitled to protection for opposition to employment practices that may not actually be unlawful under Title VII, an employee who opposes a hostile work environment need not prove that the environment he complained of was actually hostile in order for the employee to receive protection from retaliation under Title

13

VII." *Yazdian*, 793 F.3d at 646 (citation omitted).  Instead, a plaintiff must show, subjectively, that he actually believed that the conduct complained of was a violation of relevant law, and objectively that a reasonable person in the same factual circumstances with the same training and experience would believe that the conduct complained of was unlawful.  *Id.*

Here, the Court finds a genuine issue of material fact as to whether plaintiff can establish that he engaged in protected activity through his February 2019 written statement. In his statement, plaintiff did accuse Paez, a co-worker, of soliciting him for money in exchange for sex [Doc. 24-2, p. 5].  And plaintiff mentioned that other co-workers had expressed negative opinions about his allegations against Paez because of plaintiff's sex [*Id.* at 6].  Ultimately, whether these allegations are sufficient to raise a valid claim under Title VII is irrelevant; the question is whether plaintiff subjectively believed that he was complaining of a Title VII violation and whether such belief was objectively reasonable. *See Yazdian*, 793 F.3d at 646.

There is certainly evidence that plaintiff subjectively believed he was complaining about sex discrimination or sexual harassment in submitting his written statement. Specifically, it is plaintiff's testimony that his intention in submitting the written statement was to report sexual harassment and discrimination [Doc. 27-3, p. 2].  The more difficult question is whether there is a genuine issue of material fact as to whether plaintiff's belief in this regard was objectively reasonable.  Both Saliva and Henning testified that they reviewed plaintiff's written statement and did not understand plaintiff to be complaining

14

of harassment or discrimination [Doc. 24-2, p. 1; Doc. 24-3, p. 2]. However, both Saliva and Henning were HR employees of defendant, and the standard against which the objective reasonableness of plaintiff's belief must be judged is whether someone with the same training and experience, and in the same factual scenario, would believe that they were raising a Title VII complaint. *See Yazdian*, 793 F.3d at 646. In light of this standard, the Court cannot say at this stage, with the evidence before it, that there is no genuine issue of material fact as to whether plaintiff's belief that he was engaging in protected activity by submitting his written statement was objectively reasonable. Accordingly, the Court finds a genuine issue of material fact as to whether plaintiff can establish this element of a prima facie claim of retaliation.

## 2. Employer Knowledge

As the Northern District of Ohio succinctly stated: "[n]o awareness; no retaliatory animus or claim." *Skinner v. Bowling Green State Univ.*, 461 F. Supp. 3d 667, 674 (N.D. Ohio 2020) (citation omitted). Specifically, the relevant decision maker must have known of plaintiff's protected activity. *Mulhall v. Ashcroft*, 287 F.3d 543, 548 (6th Cir. 2002). "Circumstantial evidence can support a reasonable inference of the decisionmaker's knowledge if the evidence is comprised of specific facts and not merely conspiratorial theories, flights of fancy, speculations, hunches, intuitions, or rumors." *Rembert v. Swagelok Co.*, ___ F. Supp. 3d ____, 2022 WL 1695167, at *14 (N.D. Ohio 2022) (internal quotation marks omitted).

15

Here, there is no genuine issue of material fact that the decisionmaker, Patton, did not have knowledge of plaintiff's alleged protected activity, as he does not recall ever reviewing plaintiff's written statement [Doc. 24-4, p. 2]. Plaintiff appears to argue that Patton's testimony is insufficient, as he has not affirmatively shown that he did not review the written statement, only that he does not recall reviewing it [Doc. 27, p. 22 n.5]. But plaintiff ultimately bears the burden of establishing a prima facie case of retaliation, *see Gribcheck*, 245 F.3d at 550, and even at the summary judgment stage, must "present sufficient evidence from which a jury could reasonably find for him." *See Jones*, 625 F.3d at 940. But plaintiff's argument regarding Patton's potential knowledge of the written statement is simply based on "conspiratorial theories, flights of fancy, speculations, hunches, intuitions, [and/or] rumors," rather than evidence, and therefore is insufficient to raise a genuine issue of material fact as to Patton's knowledge of the alleged protected activity. *See Rembert*, 2022 WL 1695167, at *14.

However, this does not end the inquiry as there is evidence that Henning reviewed plaintiff's written statement and subsequently recommended to Patton that both plaintiff and Paez be terminated [Doc. 24-3, pp. 1–2]. And "knowledge may be imputed to the employer when an individual with knowledge was the actual decisionmaker and 'driving force behind the employment action.'" *Roddy v. Tenn. Dep't of Corrs.*, ___ F. Supp. 3d ___, 2023 WL 180052, at *6 (M.D. Tenn. 2023) (quoting *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008)). Such occurs "[w]hen a decisionmaker acts in accordance with a retaliator's bias without himself evaluating the employee's situation[.]" *Roberts*,

16

283 F. App'x at 333 (internal quotation marks and alterations omitted).  On the other hand, "when a decisionmaker makes a decision based on an independent investigation, any causal link between the subordinate's retaliatory animosity and the adverse action is severed."  *Id.*

The Court ultimately finds that there is no genuine issue of material fact as to whether Henning's knowledge of plaintiff's written statement can be imputed to the employer as knowledge of protected activity.  First, there is no genuine issue of material fact as to whether Henning recognized plaintiff's written statement as containing allegations of sex discrimination or sexual harassment.  Henning stated that, after reviewing plaintiff's written statement, she did not understand him to be raising a claim of sex discrimination [Doc. 24-3, p. 2].  This evidence of Henning's understanding is circumstantially supported by Saliva's similar statement that he did not understand plaintiff to be complaining of sex discrimination [Doc. 24-2, p. 1], and the general vagueness of plaintiff's written statement, which never used the words "discrimination" or "sexual harassment" [Doc. 24-2, pp. 5–6].  Given the lack of any other evidence, the Court finds that there is no genuine issue of material fact as to whether Henning actually understood plaintiff to be complaining of sex discrimination or sexual harassment, such that her knowledge of his written statement could be imputed to defendant as knowledge of a protected activity.

Moreover, even if Henning understood plaintiff to be complaining about sex discrimination or sexual harassment, her knowledge cannot be imputed to Patton, the ultimate decisionmaker, because Patton did not blindly rely on Henning's recommendation

17

that plaintiff and Paez both be terminated. Instead, Patton reviewed the Incident Report prepared by Saliva, and discussed the matter with both Henning and Hulsey [Doc. 24-4, pp. 1–2]. Notably, Hulsey also did not recall reviewing plaintiff's written statement and had no knowledge that plaintiff had raised any claim of discrimination [Doc. 24-5, p. 2]. Accordingly, it appears that Patton's termination decision was based on an independent review of Saliva's investigation, and discussion with other members of management, and therefore, Henning's knowledge of plaintiff's written statement, even to the extent that she could be deemed to have understood that such raised a claim of discrimination or harassment, could not be imputed to Patton, the decisionmaker. *See Roberts*, 283 F. App'x at 333.

The Court therefore concludes that there is no genuine issue of material fact as to whether plaintiff can establish the knowledge element of a prima facie claim of retaliation, and summary judgment is appropriate on plaintiff's retaliation claim.

### 3. Causal Connection

Although the Court has found that plaintiff cannot establish the knowledge element of a prima facie case of retaliation, for the sake of completeness, the Court will nonetheless address whether plaintiff can establish a causal connection between his alleged protected activity and his termination. "In order to establish causation, a plaintiff must demonstrate that, 'but for' the protected activity, the employer would not have taken the adverse employment action." *Eyster v. Metro. Nashville Airport Auth.*, 479 F. Supp. 3d 706, 719 (M.D. Tenn. 2020). When "an adverse employment action occurs very close in time

18

after an employer learns of a protected activity, such temporal proximity . . . is significant enough to constitute evidence of a causal connection[.]" *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (addressing a Title VII retaliation claim). However, temporal proximity alone is generally insufficient to establish a causal connection, and instead, "must be coupled with other indicia of retaliatory conduct." *Eyster*, 479 F. Supp. 3d at 719–20.

The Court finds no genuine issue of material fact as to whether plaintiff can establish a causal connection between his alleged protected activity and his ultimate termination. Based on the Court's prior discussion, absent employer knowledge of the alleged protected activity, such simply could not have been the "but-for" cause of his termination. And, even if the Court were to assume that (1) Henning understood that plaintiff was complaining of discrimination or harassment in his written statement; and (2) Patton relied solely on Henning's recommendation to terminate, plaintiff still has produced no evidence that Henning's termination recommendation was made *because of* plaintiff's written statement. In fact, the record establishes that Henning recommended that both plaintiff and Paez be terminated [Doc. 24-3, p. 1], which indicates that her recommendation was based on the conduct described in the Incident Report, rather than any complaints contained in plaintiff's February 2019 written statement.

Plaintiff seems to rely solely on the temporal proximity between his February 2019 written statement, and his termination, which occurred on February 12, 2019 [Doc. 24-4, p. 2], to establish this causal connection element. But, as noted previously, temporal

19

proximity alone is generally insufficient to establish a causal connection, and instead, "must be coupled with other indicia of retaliatory conduct." *See Eyster*, 479 F. Supp. 3d at 719–20. Here, there is no other indicia of retaliatory conduct, and therefore, the Court finds that the temporal proximity between plaintiff's written statement and his ultimate termination is insufficient to establish a causal connection.

Accordingly, the Court finds that there is no genuine issue of material fact as to whether plaintiff can establish a causal connection between his alleged protected activity and his termination, and therefore, for this alternate reason, summary judgment is appropriate on plaintiff's retaliation claim.[3]

### 4. Co-worker Retaliation

Finally, plaintiff attempts to raise a new claim of "co-worker retaliation" in support of his retaliation claim. As the Court previously explained "plaintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint." *Howard*, 740 F. App'x at 843; *see also Kennedy*, 2018 WL 6330305 at *7 ("A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment"); *Bridgeport Music*, 508 F.3d at 400 ("To the extent [the plaintiff] seeks to expand its claim to assert new theories, it may not do so in response to summary judgment

---

[3] Notably, in his amended complaint [Doc. 12], plaintiff alleged retaliation based on defendant's attempt to prevent him from obtaining subsequent employment. From the record before the Court, it appears plaintiff has abandoned this argument. However, to the extent that plaintiff still contends that defendant retaliated against him by attempting to prevent him from obtaining subsequent employment, for the same reasons as discussed herein, the Court finds that there is no genuine issue of material fact as to whether plaintiff can establish the elements of employer knowledge or a causal connection, as required for a prima facie case of retaliation.

20

or on appeal"). At no point in his amended complaint [Doc. 12], does plaintiff allege a claim of co-worker retaliation, or even facts to support such a claim. Because such a claim is not properly pled, plaintiff is precluded from arguing it as a basis for opposing summary judgment, and the Court will not address the merits of such claim.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Doc. 24] will be **GRANTED** and this case will be **DISMISSED**. A separate order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE